**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Erchonia Medical Inc., an Arizona corporation, et al.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Miki Smith, et al.,<br><br>　　　　　Defendant.<br>_____ | No. CIV-02-2036-PHX-MHM<br>**Consolidated with**<br>No. CIV-02-2048-PHX-MHM<br>No. CIV-02-2353-PHX-MHM<br><br>**ORDER** |

Currently, before the Court is the Special Master's Final Report and Recommendation on Claim Construction (Dkt.#325), Erchonia Medical Inc. and Kevin Tucek's Objections to the Final Report and Recommendation on Claim Construction (Dkt.#326) and Erchonia Medical Inc.'s Motion to Correct Apparent Typos in the Court's December 16, 2005 Order. (Dkt.#324). After reviewing the pleadings the Court issues the following Order.

**I.　Procedural History**

Pursuant to Rule 53, Fed.R.Civ.P this action was referred by order to Gale Peterson to serve as a Special Master for interpretation of the claims of United States Patent 6,013,096 ("the '096 Patent"). (Dkt.#259). This referral derives out of Erchonia Medical, Inc. and Kevin Tucek's (collectively "Erchonia") claim that Robert E. Moroney, LLC, Robert E. Moroney, Miki Smith, George Gonzales and Lorena Guzman, KMS Marketing, Inc. and A Major Difference, Inc., (collectively "REM") have infringed claims 1-3, 5-12 and 14-16 of

1 the '096 Patent. A <u>Markman</u> hearing was conducted by the Special Master on August 26, 2005 and on January 11, 2006 the Special Master issued his Draft Report and Recommendation granting the parties 30 days from the date the Draft was served to file comments limited to those instances where the parties believed there to be "clear errors of law and fact, or otherwise requires clarification." (Draft Report and Recommendation, p.3). On February 9, 2006, REM filed a response stating that the Draft Report and Recommendation required only one clarification with respect to term "optical arrangement" as used in Independent Claims 1 and 10 of the '096 Patent. On February 21, 2006 Erchonia filed their reply in opposition to REM's response to the Draft Report and Recommendation. After taking into consideration the parties comments regarding the Draft Report and Recommendation the Special Master issued his final Report and Recommendation on March 15, 2006. (Dkt.#325). Erchonia has filed an Objection to the final Report and Recommendation with respect to the construction of the term "optical arrangement" (Dkt.#326) and REM has filed its Response in support of the Special Master's construction of "optical arrangement." There have been no other objections filed.

**II.    Background Regarding Erchonia's Objection To Final Report and Recommendation**

In the Final Report and Recommendation issued by the Special Master he provides analysis regarding his ultimate recommendation regarding the definition of "optical arrangement." (Final Report and Recommendation, pp. 65-123). Specifically, the Special Master's final recommendation is that "optical arrangement" as referenced in Independent claims 1 and 10 means:

> A collection comprising two or more mirrors lens, prisms, or other optical devices, placed in some specified configuration, which reflect, refract, dispense, absorb, polarize, or otherwise act on light. That definition allows for a combination of two or more different optical devices. Also, a mirror, whether it is motorized or not, is an optical device.

(Final Report and Recommendation, p. 123).

This final recommendation differs from the recommendation issued in the Draft Report and Recommendation. In the Draft Report and Recommendation, the Special Master concluded that by finding that the "optical arrangement" limitation is not a "means-plus-

1  function limitation" governed by § 112(6) and that the specification does not define or limit
2  "optical arrangement" to "a collimating lens and a line generating prism arranged in a serial
3  relationship and mounted within the interior cavity between the semiconductor laser diode
4  and the open forward end of the wand" that the dispute by the parties was resolved because
5  the parties had indicated a general agreement on its meaning if the term was not deemed to
6  be a "coined" term or specially designed in the '096 patent.  (Draft Report and
7  Recommendation, p.112).
8       REM filed its Response to the Draft Report and Recommendation arguing that the
9  definition needed to be clarified to virtually mirror the definition of "optical system" which
10 is defined in the McGraw-Hill Dictionary of Scientific and Technical Terms (5th Ed. 1994)
11 as:
12     a collection comprising mirrors, lens, prisms, or other devices placed in some
       specified configuration, which reflect, refract, disperse, absorb, polarize or
13     otherwise act on light.
14      REM stated that the reliance on this definition was agreed to by the parties at the
15 Markman Hearing with two additional modifications.  Specifically, that the definition add
16 language to limit it to "a collection comprising two or more mirrors..." (emphasis added) and
17 the initial language of "other devices" be clarified to "other optical devices."  (REM
18 Response to Draft Report, p. 2-3).  REM stated that these modifications were appropriate
19 because they were agreed upon by the parties and would limit any future disputes regarding
20 the construction of "optical arrangement."
21      Erchonia responded to REM's comments and disputed the necessity of the clarification
22 of the definition of "optical system" as Erchonia believes that the term "optical arrangement"
23 is equivalent to "optical system" with no need for any further modification or clarification.
24 (Erchonia's Reply to Draft Report, p. 2-3).
25      After receiving the Parties' comments, the Special Master finalized his
26 recommendation of the construction of "optical arrangement" by incorporating the use of the
27 definition of "optical system" as defined by the McGraw-Hill Dictionary as well as
28 incorporated the modifications suggested by REM.  The Special Master concluded that the

1 addition of "other optical devices" was to be adopted to reflect the parties' underlying
2 agreement and to avoid future controversies. (Final Report and Recommendation, p.118).
3 Second, with respect to the addition of the language of "two or more mirrors," the Special
4 Master provided a detailed analysis addressing the parties' comments to the Draft Report and
5 Recommendation and looked to both intrinsic and extrinsic evidence. (Id. pp. 116-123).

6 To this final determination, Erchonia objects and requests that the Court instead adopt
7 the meaning of "optical arrangement" consistent completely with the meaning of "optical
8 system" as defined by the McGraw-Hill Dictionary without the modification suggested by
9 REM and adopted by the Special Master.

10 **III.   Analysis**

11 **A.   Court's Review of the Special Master's Report and Recommendation Regarding Definition of "Optical Arrangement."**

12 In reviewing the Special Master's Report, this Court reviews de novo the findings of
13 fact and conclusions of law objected to by the parties. Fed.R.Civ.P. 53(g)(3)&(4). All other
14 findings of fact and conclusions of law may be reviewed de novo. See Fed.R.Civ.P. 53
15 advisory committee note on 2003 amendment.

16 The construction of patent terms is a question of law determined by the court.
17 Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir. 1995). The Court must first
18 look to the intrinsic evidence of the patent to determine the scope of the claims. Id. at 979.
19 The intrinsic evidence includes the words of the claims themselves, the specification, and the
20 prosecution history, if in evidence. Id.  Where the use of intrinsic evidence alone will
21 resolve the ambiguity in a disputed term consideration of extrinsic evidence is improper.
22 Hockerson-Halberstadt, Inc., v. Avia Group, Int'l, Inc., 222 F.3d 951, 955 (Fed.Cir. 2000).
23 However, the court may in its discretion receive extrinsic evidence to aid the court in coming
24 to a correct conclusion as to the true meaning of language employed in the patent. Markman,
25 52 F.3d at 980. "Extrinsic evidence consists of all evidence external to the patent and
26 prosecution history, including expert and inventor testimony, dictionaries, and learned
27 treatises." Id.
28

**B.     Erchonia's Objections to Special Master's Final Report and Recommendation.**

Erchonia has set forth multiple bases in opposition to the Special Master's Final Report and Recommendation regarding his interpretation of the term "optical arrangement." Erchonia contends that Special Master's final recommendation is flawed because "optical arrangement" does not necessitate that there be two or more optical devices but rather that it can consist of a single lens or other optical device. However, in reviewing these objections it is clear that the Special Master properly considered the record before him and evidence presented to come to a logical conclusion regarding the meaning of "optical arrangement."

(1)     The Parties Discussed The Definition of "Optical Arrangement" That is Proposed by the Special Master.

First, Erchonia argues that the modifications added by the Special Master to the definition of "optical arrangement" were improperly raised by REM in its Response to the Special Master's Draft Report and Recommendation. (Erchonia Objection, p. 5). However, a review of the record simply does not support that argument. Rather, a review of the Markman Hearing transcript reveals that these modifications to the definition of "optical arrangement" were discussed by both parties and, at the very least, the parties were able to come to a common understanding of the meaning of "optical arrangement" at the Markman hearing. At the Markman hearing the following discussion took place:

> **Special Master Peterson**: Okay, I am going to dictate slowly the definition for "optical system" taken from the McGraw-Hill Dictionary of Scientific and Technical Terms, and it is in the field of optics. It is, quote: A collection comprising mirrors, lenses, prism and other devices placed in some specified configuration which reflect, refract, disperse, absorb, polarize or otherwise act on light period, close quote. Now, my question, Mr. Brunelli, is what, if anything, in the specification or prosecution history would indicate that would incorrectly describe "optical arrangement"?
> ...
>
> **Mr. Brunelli**:     Okay. I've got two points. One, I read the definition as requiring at least - Because of the word "collection," I read that as requiring at least two of these things. Is that how you're reading it, as well?
>
> **Special Master**:     Well, I hadn't gotten to that point yet, but all right.
>
> **Mr. Brunelli**:     So if there is - I suppose you could read "collection" as requiring only one or more of these, as well, so there is an ambiguity there. If it's - If it's not at least two, I think neither the Specification nor the file history

1
2
3

support - would support the reading. Second, I believe that a - "other devices" is broad in that it may include things that are not optics such as mechanical elements, a mechanical mask, or an electromechanical element such as a motorized mirror. Those are clearly - Those type of things are clearly not encompassed by the specification.

...

4
5

**Special Master**:   Well, just a second. Let me - We can solve that issue easily by changing "other devices" to "other optical devices."

6

**Mr. Brunelli**:   Okay.

7
8

**Special Master**:   And if we just make it clear, we say "a collection comprising two or more.."

9
10
11
12

**Mr. Brunelli**:   If we went with "a collection comprising two or more mirrors, lenses, prisms or other optical devices placed in some specified configuration which reflect, refract, disperse, absorb, polarize, or otherwise act upon light" and you're asking me if that would be a acceptable definition for "optical system," and clearly I think that would because it came out of the dictionary, as you just stated, and the next question becomes does "optical system" - can "optical system" be changed for "optical arrangement"? Am I following you?

13
14

**Special Master**:   Well, no, you're changing the second question slightly. Is that an accurate definition of the term "optical arrangement" as it is used in the context of the patent and prosecution history of the case?

15
16

**Mr. Brunelli**: Well, I really think that the - because of the way this patent was drafted, I really think that the patentee defined "optical arrangement" as being a particular thing.

17

**Special Master:**   I understand.

18
19
20
21

**Mr. Brunelli**:   But let's - let's assume that argument is falling - is falling short, in your opinion, and so I will argue in the alternative. If, in the alternative, "optical arrangement" is - is not - has not been defined, then I think the proposed definition that we've just run through would work in understanding what is meant by "optical arrangement" as used in the claims of the '096 Patent.

22

**Special Master**:   All right. Mr. Schwartz, did you have anything to say in closing?

23

...

24
25
26
27
28

**Mr. Schwarz**:   Well, I think those are good questions then. I will tell you that I think that - seeing the file history, that there is - that the examiner, at least, had the opinion that optical - Well, he had a discussion about other optical arrangements as taught in Oshiro and Blum, kind of my interpretation of his - what you stated, he had a long discussion about other optical arrangements that could be used, including light generating prisms and lenses and those things, and discussed that they were well-known in the art. So I would support your - I support the contention that "optical arrangement" is broader than just a line generating prism and a collimating lens. And I also,

- 6 -

as I said earlier, believe "optical system" and "optical arrangement" are equivalent.

**Special Master**: All right. Let me - Let me ask you, Mr. Schwartz, from that definition that we just discussed with Mr. Brunelli would that be acceptable from your standpoint?

**Mr. Schwartz**: I think that the definition you just read out of the McGraw-Hill Dictionary was extremely accurate. <u>I don't have any concern what you've proposed as alternative language here other than making clear two things. When you say - you had - At one point in your discussion Mr. Brunelli said "comprising two or more." I'd like to make clear that it can be in combination. You could obviously have a lens and a prism, it doesn't have to be two lenses or two prisms, although I think that's what you intended anyway.</u> (Emphasis added).

**Special Master:** Yes.

**Mr. Schwarz**: The only point where I disagree with Mr. Brunelli was he made a point of saying that a motorized mirror, he believed, would be a mechanical device. I think that a mirror, whether it's motorized or not, is an optical device, but I'm not sure we need to go that far for purposes of this discussion.

**Special Master**: All right. All right. Anything else, Mr. Schwartz?

**Mr. Schwartz**: No sir. I think that gives you a good flavor. I would just refer you, as I know you're fully familiar, to the briefs or anything that we didn't address during oral argument.

(August 25, 2005 <u>Markman</u> Hearing Transcript. pp. 39-46, ll. 21-1).

The above discussion demonstrates that both parties were given an opportunity to discuss and dispute the meaning of "optical arrangement" wholly consistent with the construction the Special Master recommends now. Additionally, a plain reading reveals that the parties seemed to be in general agreement that the proposed definition by the Special Master in his Final Report and Recommendation was appropriate.

    (2) <u>The Prosecution History and Prior Art Support the Special Master's Recommendation</u>.

Second, the Special Master's Final Report and Recommendation soundly describes his determination that an "optical arrangement" calls for two or more optical devices. Despite Erchonia's argument to the contrary, the prosecution history and prior art supports the Special Master's recommendation that "optical arrangement" consist of two or more optical devices rather than just a single optical device as Erchonia contends.

1 Specifically, Erchonia contends that the Special Master failed to appreciate that the
2 Patent Examiner of the '096 patent considered the possibility that "optical arrangement"
3 could be made up of a single prism. Erchonia cites the Patent Examiner's statement in
4 rejecting claim 5 of the '096 Patent that it would have been obvious "to modify the combined
5 device of Ohshiro et al and Blum et al, with Itzkan to provide a line generating prism as an
6 alternative, equivalent means for focusing the light onto the tissue in a line." (Draft Report
7 and Recommendation p. 82, citing Office Action at 4). Erchonia contends that this statement
8 shows that the Patent Examiner considered the possibility of a single prism acting as an
9 optical arrangement on the '096 Patent, thus supporting its position that "optical arrangement"
10 does not necessitate two or more such devices. However, as noted by REM, this argument
11 has been addressed by the Special Master with sound reasoning. Most significantly, the
12 Patent Examiner's statement, cited above, was made in the context of rejecting claim 5 of the
13 original '096 application on the basis of obviousness in light of the prior art. Specifically,
14 application claim 5 (ultimately patent claim 4) specified in pertinent part:

> 5. The device of claim 1 wherein said optical arrangement includes:
>    a. collimating lens; and
>    b. line generating prism, said collimating lens and line generating prism disposed in a serial relation to said generating means.

(Final Report and Recommendation, p. 118).

The Patent Examiner's rejection was based upon two optical devices, a "collimating lens" and "a line generating prism." Thus, it cannot be said that the Patent Examiner contemplated only one optical device.

Additionally, Erchonia's reliance Ohshiro et al., patent #4,905,690, a prior art reference to the '096 Patent, for the proposition that "optical arrangement" may consist of only one optical device is not persuasive. As noted by the Special Master, the Ohshiro patent consists of a "series of lenses." (Final Report and Recommendation, p. 49, Exhibit 1 to REM's Response, abstract of Ohshiro et al.). Obviously, a "series of lenses" would suggest more than one lens or optical device.

- 8 -

Lastly, Erchonia's reliance on the Sousa et al, patent #5,822,345, to lend support to its argument that "optical arrangement" does not necessitate "two or more" optical devices is not persuasive. As Erchonia points out, the Special Master noted that the Sousa et al specification relates that "optical system 13, ... can be a focusing lens or other suitable optical arrangement..." (Draft Report and Recommendation, p. 89, Exhibit 2 to REM's Response, '345 patent, col. 7, ll. 19-22). However, the Sousa patent specification also possesses language suggesting that "optical arrangement" calls for two or more optical devices, or lenses. Specifically, in the same specification, the patent calls for a "series of lenses." (Exhibit 2, to REM's Response, '345 patent, col. 5-6, ll. 62-8).

Thus, the prosecution history of the '096 patent and the prior art addressing "optical arrangement" reasonably suggest that an "optical arrangement" would likely require at least two or more lenses or devices. At the very least, contrary to Erchonia's position, the prosecution history and prior art of the '096 Patent do not evidence that an ordinary person skilled in the art would equate "optical arrangement" with only one such device.

        (3)    <u>The Special Master Did Not Improperly Apply The Preferred Embodiment Into The Claims</u>.

Erchonia also argues that the Special Master improperly read claim limitations from the preferred embodiment when interpreting "optical arrangement" in the independent claims. Specifically, Erchonia relies on the Special Master's reference in the Final Report and Recommendation that the specific embodiment disclosed in the specification of the '096 Patent has at least two optical elements or devices; specifically the "collimating lens" and "line generating prism." (Final Report and Recommendation, p. 120). However, Erchonia's argument is not well taken as it even acknowledges that the Special Master did not relate that specific limitation from the preferred embodiment of a "collimating lens" and a "line generating prism" into the definition of "optical arrangement." (Erchonia's Objection to Final Report, p. 7-8). Rather, the definition of "optical arrangement" is broader in that it only requires "two or more ... optical devices." Therefore, it is difficult to see how the Special

- 9 -

Master improperly read the limitations of the preferred embodiment of the '096 into the definition of "optical arrangement."

This same line of reasoning also rebuts Erchonia's argument that the Special Master ran afoul of the doctrine of claim differentiation, which prohibits dependent claim limitations from being read into independent claims. See Curtiss-Wright Flow Control Corp. v. Velan, Inc. 438 F.3d 1374, 1380 (Fed. Cir. 2006). As discussed above, the Special Master's definition of "optical arrangement" requires only a collection of "two or more... optical devices." (Final Report and Recommendation, p. 123). Whereas, the limitations of the preferred embodiment, such as in dependent claim four, relate that the dependent claims involve a "collimating lens" and "a line generating prism" which are distinct types of "optical devices." (Final Report and Recommendation, p. 120). Therefore, because the independent claim is based upon the broad category of "optical devices" and the dependent claims involve specific types of "optical devices" it cannot be said the Special Master read the claim limitations into the independent claims.

(4)     The Special Master Did Not Improperly Assign A Burden of Proof.

Lastly, Erchonia argues that the Special Master improperly assessed it a burden of proof in determining the meaning of "optical arrangement." Specifically, Erchonia cites the Special Master's determination that neither party had provided proof of the question of how one of ordinary skill in the art would interpret "optical arrangement." However, Erchonia's argument is not persuasive because the fact that the Special Master noted that both parties provided inadequate evidence in support of their purported interpretations of "optical arrangement" does not mean he assigned a burden of proof to either party. It simply demonstrates that the evidence presented by both parties was not helpful in making the ultimate determination. Rather, the Special Master turned to other reliable means of interpretation such as other intrinsic and extrinsic evidence.

**C.     The Definition of "Optical Arrangement"**

The Special Master followed proper procedure in formulating his final recommendation regarding the term "optical arrangement." He looked first to the intrinsic

- 10 -

1  record to determine the proper definition of "optical arrangement." However, after reviewing
2  the intrinsic record, including the claim language, prosecution history and specification it is
3  unclear if one of ordinary skill in the art would determine if an "optical arrangement" can be
4  made up of just one "optical device" or calls for at least two. (Final Report and
5  Recommendation, pp. 120, 121).

6  Because, of this uncertainty, it was appropriate for the Special Master and is
7  appropriate for this Court to turn to available extrinsic evidence available. Here, the Special
8  Master with the parties consent turned to the dictionary, to resolve any ambiguity. Phillips,
9  415 F.3d at 1318-19. Both parties generally agreed to the persuasiveness of the McGraw-
10 Hill Dictionary of Scientific and Technical Terms (5th Ed. 1994) with its definition of "optical
11 system."

12 First, as noted by the Special Master, the plain meaning of term "arrangement"
13 connotes multiple parts. See Merriam-Webster's Collegiate Dictionary (10th Ed. 1999) at 64
14 (defining "arrangement" as "something made by arranging parts or other things together").
15 Thus, the term itself would call for at least two devices, not a single device as Erchonia
16 contends.

17 Second, the technical definition of "optical system" as defined in the McGraw-Hill
18 Dictionary of Scientific and Technical Terms (5th Ed. 1994) is, "a collection comprising
19 mirror<u>s</u>, lens, prism<u>s</u>, and other device<u>s</u>, placed in some specified configuration, which
20 reflect, dispense, absorb, polarize, or otherwise act on light."(emphasis added). This
21 definition speaks in terms of multiples and again indicates that "optical arrangement" would
22 call for at least two or more devices.

23 Thus, when turning to plain language of the dictionary terms of "arrangement" and
24 "optical system" it is apparent that the term itself indicates that more than one "optical
25 device" is necessary. The Court in performing a review of the intrinsic record and extrinsic
26 record agrees with the Special Master's final recommendation that "optical arrangement" as
27 listed in independent claims 1 and 10 means:

28

1  A collection comprising two or more mirrors, lens, prisms, or other optical
2  devices, placed in some specified configuration, which reflect, refract, dispense, absorb, polarize, or otherwise act on light. That definition allows for a combination of two or more different optical devices. Also, a mirror whether
3  it is motorized or not, is an optical device.

4  Therefore, the Court adopts the Special Master's Final Report and Recommendation.

5  **IV.  Erchonia's Motion to Correct Apparent Typos of December 16, 2005 Order**

6  Lastly, on December 16, 2005 the Court issued it Order addressing the various
7  dispositive motions between the parties. On February 21, 2006, Erchonia, pursuant to Rule
8  60(a), Fed.R.Civ.P., filed its Motion requesting that the Court correct certain "apparent
9  typos" with respect to the identity of certain parties referenced in the Court's Order.  In
10 reviewing Erchonia's request, and seeing that there is no objection, the Court will grant
11 Erchonia's request. Thus, on page 22, line 23, "Mr. Shanks" will be changed to "Mr. Smith"
12 and page 27, line 11, "Erchonia" will be changed to "REM."

13 **Accordingly,**

14 **IT IS HEREBY ORDERED** adopting in full the Special Master's Final Report and
15 Recommendation. (Dkt.#325).

16 **IT IS FURTHER ORDERED** overruling Erchonia's Objection to the Special
17 Master's Final Report and Recommendation. (Dkt.#326).

18 **IT IS FURTHER ORDERED** granting Erchonia's Motion to Correct Apparent
19 Typo's  in the Court's December 16, 2005 Order. (Dkt.#324). On page 22, line 23, "Mr.
20 Shanks" will be changed to "Mr. Smith" and on page 27, line 11, "Erchonia" will be changed
21 to "REM."

22 **IT IS FURTHER ORDERED** setting this matter for a status hearing on June 29,
23 2006 at 4:00 p.m. to address the further handling of Erchonia's patent infringement claim and
24 posture of the case. The parties are to meet and confer prior to the hearing.

25 DATED this 8th day of June, 2006.

26
27
28
   _____
   Mary H. Murguia
   United States District Judge